IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANGELA WHITTENBURG                                                          PLAINTIFF

v.                                            CIVIL NO. 14-5195

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Angela Whittenburg, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on May 10, 2011, alleging an inability to work since February 1, 2009[1], due to Crohn's disease, degenerative disc disease, chronic right-sided abdominal pain, insomnia, cardiac problems, poor memory, asthma, obesity, depression, and anxiety. (Tr. 244, 271). An administrative hearing was held on October 2, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 33-86).

---

[1] Plaintiff, through her counsel, amended her alleged onset date to October 27, 2010. (Tr. 36).

1

By written decision dated January 24, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 19). Specifically, the ALJ found Plaintiff had the following severe impairments: a disorder of the lumbar spine, Crohn's disease, asthma, and obesity. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl; the claimant must avoid concentrated exposure to dusts, odors, gasses, fumes, and poor ventilation; and the claimant should have reasonable access to restroom facilities to use during normal work breaks.

(Tr. 22). With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as a mail clerk and an accounting clerk. (Tr. 27).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 21, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Evidence Presented:**

At the time of the administrative hearing held before the ALJ, Plaintiff was thirty years of age and had obtained an eleventh grade education.

The pertinent medical evidence in this case reflects the following. On December 2, 2010, Plaintiff was seen at FirstCare South by Dr. Ann-Marie Magre. (Tr. 330-331). Plaintiff complained of an abscess on her abdomen and a cyst on her finger. Plaintiff denied fatigue, vomiting, diarrhea, constipation or gastrointestinal pain. Plaintiff was assessed with a sebaceous cyst and cellulitis. It was recommended that Plaintiff see an orthopedic doctor for the cyst, and that she start taking Bactrim for the abscess.

On January 28, 2011, Dr. Sydney L. Vinson noted Plaintiff was in for her Crohn's disease. (Tr. 592-593). It was noted that Plaintiff had not been seen since 2009. Dr. Vinson noted Plaintiff was in primarily because of a continuously draining boil on her abdomen. Plaintiff denied any trouble with diarrhea, but reported diffuse abdominal pain on her right side. Dr. Vinson noted that Plaintiff was not taking any medication for Crohn's disease. Plaintiff was to undergo a CT of the abdomen (Tr. 598-599), and prescribed medication.

On April 12, 2011, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 328-329). Plaintiff was noted to have a worsening of her obesity. Dr. Magre noted Plaintiff was getting insufficient exercise and had a poor diet. Plaintiff also reported experiencing fatigue. Plaintiff was started on an appetite depressant, and instructed to keep a food and exercise journal.

On April 12, 2011, Plaintiff was also seen by Dr. Vinson for a follow-up for her Crohn's disease. (Tr. 590-591). Dr. Vinson noted that Plaintiff's labs at her last visit were essentially normal. At that time, Plaintiff was having constipation but no diarrhea. Dr. Vinson noted that Plaintiff's bowel movements normalized with Levaquin and Flagyl. Plaintiff's abdominal wound was noted as moist but not draining. Dr. Vinson assessed Plaintiff with a possible

fistula versus just panniculitis. Dr. Vinson noted that it was not clear if Plaintiff had active Crohn's, and that Plaintiff seemed to be doing well.

On May 12, 2011, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 326-327). Plaintiff's chief concern was noted as her weight loss. Plaintiff was noted as being morbidly obese, but the notes indicated this problem was improving due to Plaintiff's thirty minutes of cardiovascular exercise three times per week, and an appetite suppressant. Plaintiff denied fatigue, vomiting, diarrhea, constipation or gastrointestinal pain. Plaintiff was assessed with chronic obesity.

On May 20, 2011, Plaintiff was seen at the Northwest Arkansas Clinic for Women for her annual exam. (Tr. 357-358). Plaintiff reported that she walked regularly for exercise.

On June 3, 2011, Plaintiff underwent a pelvic ultrasound which revealed a subendometrial mass. (Tr. 360-361). It was recommended that Plaintiff have a clinical exam. Plaintiff also underwent a breast ultrasound due to palpable lumps. (Tr. 362). Plaintiff was also to have a clinical examination of her breast.

On July 7, 2011, Plaintiff underwent a diagnostic hysteroscopy, dilatation and curettage performed by Dr. Candy Birch. (Tr. 390-394).

On July 20, 2011, Plaintiff was seen at FirstCare South by Benjamin P. Sexton, PA-C. (Tr. 407-408). Plaintiff reported that she woke up the previous day with a sore throat and a fever. Plaintiff was assessed with tonsillitis, administered a Rocephin injection, and prescribed Ceftin. Nurse Sexton noted Plaintiff had Lortab for her back and she was to take this medication as directed if needed.

On July 29, 2011, Plaintiff was seen at FirstCare South by Candace Harper PA-C. (Tr. 405). Plaintiff complained of a sore throat. Plaintiff denied headaches, vomiting, diarrhea, constipation or gastrointestinal pain. Plaintiff was assessed with tonsillitis.

On August 4, 2011, Plaintiff was seen by Dr. Birch for a postop visit. (Tr. 413). Plaintiff had no complaints. Dr. Birch noted Plaintiff was severely overweight, and encouraged Plaintiff to diet and exercise. Plaintiff reported that she was a foster parent so she was not interested in any kind of infertility work-up.

On August 31, 2011, Plaintiff was seen at FirstCare South by Nurse Harper. (Tr. 403). Plaintiff reported that she needed a physical exam for Foster Care. Plaintiff also reported fatigue. Upon examination, Plaintiff was noted to have normal extremities with no edema. Plaintiff's abdomen was soft and non-tender. Nurse Harper also noted no unusual anxiety or evidence of depression. Plaintiff was assessed with fatigue. Plaintiff was noted to have a normal physical examination with no evidence of disease. Nurse Harper recommended that Plaintiff follow-up with Dr. Magre in one to two weeks.

On September 2, 2011, Plaintiff was seen at FirstCare South by Nurse Sexton. (Tr. 402). Plaintiff was seen for an injection. Her chronic condition was noted to be allergic rhinitis.

On September 19, 2011, Plaintiff underwent a Mental Diagnostic Evaluation performed by Dr. Terry L. Efird. (Tr. 369-372). Plaintiff drove herself to the evaluation. Plaintiff reported that she had applied for disability because of her back problems and her Crohn's disease. Plaintiff also endorsed depression and anxiety. Plaintiff denied viewing herself as having difficulty with memory, beyond typical forgetfulness. Plaintiff reported being anxious

5

most of the time. Plaintiff reported a decreased interest in activities, and sleep problems. Plaintiff denied a history of treatment for mental health issues and was not taking any psychiatric medication. Plaintiff reported living with her husband, five female foster children ranging in ages of 9 through 17, and one adopted three year old daughter. The ability to perform basic self-care tasks independently was endorsed. Plaintiff reported the ability to perform household chores fluctuated and was related to her level of physical pain. Plaintiff reported that she had last worked full-time at a daycare but was terminated due to excessive absenteeism around 2009. Dr. Efird diagnosed Plaintiff with an anxiety disorder.

With respect to adaptive functioning, Dr. Efird noted that Plaintiff was able to drive unfamiliar routes and to shop independently. Plaintiff's ability to perform activities of daily living varied and was related to her level of pain. Plaintiff reported that she visited with family twice a week, and visited with friends twice a month. Dr. Efird noted that Plaintiff performed most basic cognitive tasks adequately. Plaintiff was also able to track and respond adequately. No remarkable problems with persistence was noted, and Plaintiff appeared capable of performing basic work-like tasks within a reasonable time frame.

On September 20, 2011, Dr. Sheri L. Simon, a non-examining medical consultant, opined that there was no evidence of a severe mental impairment. (Tr. 379). After reviewing additional evidence of record Dr. Dan Donahue affirmed Dr. Simon's assessment on January 6, 2012. (Tr. 473).

On September 20, 2011, Dr. Patricia McCarron, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six

6

hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 380-387). Dr. McCarron opined that postural, manipulative, visual, communicative or environmental limitations were not evident. After reviewing additional evidence of record Dr. Steven Strode affirmed Dr. McCarron's assessment on January 7, 2012. (Tr. 472).

On January 9, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 491-492). Plaintiff was concerned about her obesity. Dr. Magre noted Plaintiff had lost weight when she was on an appetite suppressant. Treatment notes indicated that when Plaintiff had stopped taking the appetite suppressant and had quit exercising she gained weight. Dr. Magre noted Plaintiff had no joint pain or swelling and had a normal gait. Plaintiff was restarted on an appetite suppressant, and instructed to exercise.

On February 6, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 489-490). Dr. Magre noted Plaintiff's morbid obesity was improving. Plaintiff was noted as doing better with exercise. Plaintiff was assessed with chronic obesity.

On March 5, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 487-488). Dr. Magre noted Plaintiff's morbid obesity was improving. Plaintiff reported that she was doing thirty minutes of walking, five days per week. Dr. Magre noted Plaintiff was also on an appetite suppressant. Treatment notes indicated Plaintiff had lost thirteen pounds the previous month. Plaintiff was assessed with improved obesity.

On April 4, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 485-486). Plaintiff's obesity was noted as improving with the use of an appetite suppressant. Plaintiff

reported that she was feeling good because she had lost nine more pounds. Plaintiff was noted to have no joint pain or swelling, no weakness, and a normal gait.

On April 23, 2012, Plaintiff was seen at the WR Family Clinic Fayetteville after experiencing heavy bleeding. (Tr. 677-679). Upon examination, Plaintiff was noted to have a soft, non-tender abdomen. Plaintiff had a normal gait, and a normal affect and mood. Plaintiff was assessed with health maintenance and menorrhagia. Plaintiff was to undergo a pelvic ultrasound.

On April 23, 2012, Plaintiff was seen at the WR Family Clinic Fayetteville to discuss her ultrasound results. (Tr. 684). Plaintiff was encouraged to continue to lose weight.

On May 7, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 483-484). Plaintiff's chief concern was her obesity. Dr. Magre noted Plaintiff was morbidly obese, but Plaintiff's obesity was improving with the use of an appetite suppressant. Plaintiff denied depression, fatigue or weakness. Plaintiff was assessed with obesity.

On May 24, 2012, Plaintiff was seen at FirstCare South by Nurse Sexton. (Tr. 481-482). Plaintiff complained of a sore throat for the past two days. Plaintiff reported that her children had strep throat the previous week, and that she and her husband were both sick. Plaintiff was assessed with sinusitis.

On August 17, 2012, Dr. Magre completed a report indicating that Plaintiff took no medications that would impact her ability to care for children. (Tr. 546).

On August 23, 2012, Plaintiff was seen for her Crohn's disease. (Tr. 588-589). Plaintiff complained of right lower quadrant pain that had been worsening over the past month. Plaintiff also complained of some fatigue and generalized joint pains. Upon examination, Plaintiff was noted to have a soft abdomen with mild tenderness in the right lower quadrant. Cheryl L. Walsh, APN, opined that Plaintiff seemed to have a flare of Crohn's disease. Nurse Walsh noted that Plaintiff's diagnosis of Crohn's was based upon a colonoscopy in 2006. Nurse Walsh indicated that Plaintiff should undergo a repeat colonoscopy.

On September 17, 2012, Plaintiff was seen at FirstCare South by Dr. Magre. (Tr. 479-480). Plaintiff's was in for a physical exam and her anxiety. Plaintiff reported that her anxiety was aggravated by stress, and Dr. Magre noted the severity level was moderate. Plaintiff's chronic conditions were listed as allergic rhinitis and obesity. Dr. Magre assessed Plaintiff with a routine general medical exam and anxiety.

On September 18, 2012, Plaintiff underwent a colonoscopy. (Tr. 551). Plaintiff was noted to have a normal colon to the ileum. Dr. Vinson made the following additional notes:

> Symptoms and findings most consistent with irritable bowel syndrome. Terminal ileum intubated to 15 cm with no mucosal abnormalities. Capsule endoscopy could be considered if no other etiology of symptoms is determined. I doubt she has Crohn's disease and likely had a self limited ileitis in the past.

(Tr. 551-552).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must

9

be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(C).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the

national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

### IV.    Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ failed to properly develop the evidence; 2) the ALJ's decision is not supported by the evidence; 3) the ALJ improperly determined Plaintiff's RFC; 4) the ALJ improperly performed the credibility analysis; and 5) the ALJ improperly determined that Plaintiff did not meet the Listing for Crohn's disease.[2]

#### A.    Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of a September 19, 2011, consultative mental diagnostic evaluation; the assessments of four non-examining medical consultants, Drs. Simon,

---

[2] The Court notes Plaintiff's arguments will be discussed out of sequence.

11

McCarron, Donahue, and Strode; and Plaintiff's medical records. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B. Listing of Impairments:

Plaintiff argues that the ALJ failed to find that Plaintiff met or equaled the Listing for Crohn's disease.

The burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment"). In this case, the ALJ found the medical evidence does not show medical findings that are the same or equivalent to a listed impairment.

The Court finds, based upon the record as a whole Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. Accordingly, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairments do not medically equal a Listing.

### C. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In determining Plaintiff's credibility, the ALJ noted that during the relevant time period, Plaintiff and her husband continued to take in more foster care children. A review of the record reveals that in September of 2012, Dr. Magre indicated that Plaintiff was not taking any medication that would interfere with her ability to care for children, that in the last six months Plaintiff had been treated for Crohn's, and that in her opinion Plaintiff was a suitable person to have the responsibility of a child. (Tr. 546). While Plaintiff did seek sporadic treatment for other alleged impairments, it appears most of the medical treatment sought was related to Plaintiff's obesity. The record revealed that with the use of an appetite suppressant, as well as, exercise and a proper diet, Plaintiff lost weight.

With respect to activities of daily living, the record reveals that Plaintiff was able to transport her children to appointments, prepare simple meals, perform household chores with

13

breaks, drive, shop in stores for food and clothing, pay bills, and watch television. (Tr. 290-296, 370-372). The ALJ commended Plaintiff for her efforts to provide a home for as many as five foster children, but found it unlikely that Plaintiff would take on such a responsibility if her alleged pain and limitations were as severe as she had asserted.

With regard to Plaintiff's alleged mental impairments, the record failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). After reviewing the entire record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's mental impairments were not disabling.

With regard to the testimony of Plaintiff's husband, the ALJ properly considered this evidence but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D.     The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes

medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining that Plaintiff maintained the RFC to perform sedentary work with limitations, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants; Plaintiff's subjective complaints; and her medical records. The ALJ discussed the medical opinions of treating, examining, and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted). The ALJ also took Plaintiff's obesity into account when determining that she could perform sedentary work with restrictions. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

    **E.    Past Relevant Work:**

15

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the opinion of a vocational expert, who after reviewing the file, testified that Plaintiff's past relevant work as a mail clerk is classified as light work in the Dictionary of Occupational Titles (DOT), but was actually performed at the sedentary level by Plaintiff, and that Plaintiff's past work as accounting clerk is considered sedentary work in the DOT. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a mail clerk, as Plaintiff actually

16

performed the job, and an accounting clerk, as that job was performed by Plaintiff and as it is performed in the national economy.

**V.     Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of October, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE